UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

**FILED**

FEB 2 4 2017

CLERK, U.S. DISTRICT CLERK
WESTERN DISTRICT OF TEXAS
BY _Ⱥ Mowlin_
DEPUTY

| | |
|---|---|
| **GEOSOUTHERN ENERGY CORP. INC.,** <br> Plaintiff <br> <br> v. <br> <br> **CERTAIN UNDERWRITERS AT LLOYD'S LONDON AGREEMENT NO. B6049B112TA01619 SYNDICATE NO. 4020 SUBSCRIBING TO POLICY NO. PGIARK02632-00,** <br> Defendant | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> )       Civil Case No. 5:15-cv-623 |

**MEMORANDUM OPINION**

## I.    INTRODUCTION

Before the Court is plaintiff GeoSouthern Energy Corporation's ("GeoSouthern") Motion [ECF No. 24] for Summary Judgment, defendant Certain Underwriters at Lloyd's London's ("Lloyd's London") Response [ECF No. 30], and plaintiff's Reply [ECF No. 32]. For the reasons articulated below, the Court will DENY the motion for summary judgment.

## II.    BACKGROUND

This is an insurance dispute. GeoSouthern claims that Certain Underwriters at Lloyd's London owe a duty to defend and indemnify GeoSouthern for potential judgments or obligations to Narciso Noyola stemming from a Texas lawsuit, *Narcisco Noyola v. AES Safety Serivices, Inc., et al*, 150th Judicial District Court of Bexar County (Cause No. 2014CI12996).

The *Noyola* suit alleges that plaintiff GeoSouthern and AES, which is not a party here, committed negligence and gross negligence while servicing an oil tank. Noyola alleges that GeoSouthern's gross negligence caused Noyola to be exposed to hydrogen sulfide (H2S) gas, lose

1

consciousness, and fall down a flight of stairs. Noyola is seeking unspecified damages, including pain and suffering, mental anguish, medical expenses, physical impairment, disfigurement, and interest and exemplary damages.

GeoSouthern claims that Lloyd's London issued a Commercial General Liability Policy—No. PGIARK02632-00—to AES for the period of 2/14/2013 to 2/14/2014. While AES is the named insured, the policy allows the Commercial General Liability coverage to extend to additional insureds. *See* Commercial General Liability Policy [ECF No. 24-1] p. 23-24. Additional insureds include "[a]ny person(s) or organization(s) whom the Named Insured agrees, in a written contract, to name as an Additional insured." *Id.* Under a Master Service Agreement between GeoSouthern and AES, AES was required to "procure and continuously maintain in full force and effect, at its sole cost and expense, with deductibles for its sole account, the insurance coverage . . . acceptable to [GeoSouthern]." Exhibit 3 [ECF No. 25-2] p. 5. As required under that Agreement, AES furnished a Certificate of Insurance naming GeoSouthern as additional insured under the Commercial General Liability Policy No. PGIARK02632-00. *See* Exhibit 2 [ECF No. 25-1]. According to GeoSouthern, GeoSouthern is an additional insured under the Commercial General Liability Policy via the Master Services Agreement between GeoSouthern and AES. Therefore, according to GeoSouthern, Lloyd's London owes a duty to defend and indemnify GeoSouthern under the terms of that policy.

On May 19, 2015, GeoSouthern tendered a claim under the policy to Chris Cearley, AES's insurance agent at Greenwood Insurance Group, Inc. Summ. J. Exhibit 7 [ECF No. 25-6]. That claim apparently went unanswered. On July 13, 2015, the claim was then forwarded to PGI Commercial, Inc., an agent for Lloyd's London, demanding Lloyd's London defend and indemnify GeoSouthern in the *Noyola* suit. Summ. J. Exhibit 8 [ECF No. 25-7]. It is unclear if this demand

was immediately answered. Two weeks later, on July 29, 2015, GeoSouthern filed this action seeking a declaration under the Declaratory Judgment Act, 28 U.S.C. § 2201, that Lloyd's London owes a duty to defend GeoSouthern in the *Noyola* suit. Compl. [ECF No. 1].

At some point, plaintiff made contact with Rhonda Glenney, an employee of Premier Claims Management, LLC, a third-party administrator of insurance policies. *See* Summ. J. Exhibit 10 [ECF No. 25-9] (an August 5, 2015 email referencing a telephone call between Glenney and plaintiff's counsel regarding GeoSouthern's request for defense and indemnity). On December 29, 2015, defendant appeared to acknowledge the claim when Glenney forwarded an attorney assignment letter agreeing to retain plaintiff's counsel for the defense of GeoSouthern in the *Noyola* suit. Summ. J. Mot. Exhibit 11 [ECF No. 25-10]. On January 15, 2016, plaintiff's counsel demanded Lloyd's London to reimburse GeoSouthern's insurer for fees incurred. Summ. J. Mot. Exhibit 12 [ECF No. 25-11]. The amount of monies owed in attorney's fees for representation up to December 31, 2015 was $69,192.95. *Id.* Plaintiff claims that Lloyd's London still "has not accepted GeoSouthern's defense unconditionally, has not reimbursed GeoSouthern for the costs of defense in the *Noyola* suit, and has not agreed to indemnify GeoSouthern for any losses arising from the state court litigation." Summ. J. Mot. 4-5.

On January 22, 2016, GeoSouthern moved for leave to file an amended complaint to include claims for violations of the Prompt Payment Act, Tex. Ins. Code §§ 542.055-58, and common law breach of contract. Am. Compl. [ECF No. 14]. Defendant filed no opposition, and Judge Biery granted the motion.[1] Order [ECF No. 20]. Thus, this case is no longer merely a declaratory action. In addition to seeking a declaratory judgment that Lloyd's London is obligated to defend and

---

[1] This case was previously before Judge Biery. Judge Biery ordered [ECF No. 28] the case transferred to Judge Lamberth on March 31, 2016.

indemnify GeoSouthern in the *Noyola* suit, plaintiff now also seeks damage awards for actual violations of the Texas Insurance Code and common law breach of contract.

On March 23, 2016, GeoSouthern filed a Motion [ECF No. 24] for Summary Judgment, seeking a declaratory judgment that Lloyd's London owes a duty to defend and indemnify GeoSouthern. Further, the motion for summary judgment requests this court to enter judgment for breach of contract and violations of the Prompt Payment Act for Lloyd's London's "failure to acknowledge, investigate, and pay the claim [demanding defense and indemnification]." Resp. [ECF No. 24] 16. In response, Lloyd's London argues that the issues are either moot or unripe because it tendered a defense to GeoSouthern on December 29, 2015 and the underlying *Noyola* suit is ongoing. Resp. 2, ¶ 4. Lloyd's London also argues there is a material issue of fact as to when defendant was obligated to respond under the Prompt Payment Act. *Id.* GeoSouthern counters that Lloyd's London's refusal to reimburse plaintiff's counsel for services rendered prior to the tendered defense is justiciable as a violation of the Prompt Payment Act and breach of contract. Reply [ECF No. 32] 2-3.

## III.    LEGAL STANDARDS

Under Federal Rule of Civil Procedure 56, a court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). The moving party bears the burden of establishing the lack of a genuine issue of material fact. *Id.* "[I]f the movant bears the burden of proof on an issue, either because he is the plaintiff or as a defendant he is asserting an affirmative defense, he must establish beyond peradventure all of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986).

A fact is material if it could affect the outcome of a case. *Anderson*, 477 U.S. at 247. A dispute is genuine if the evidence is such that "a reasonable jury could return a verdict for the nonmoving party." *Id.* Once the moving party demonstrates a lack of an issue of material fact, the burden passes to the nonmoving party to produce evidence or raise issues of fact for trial. *See Fordoche, Inc. v. Texaco, Inc.*, 463 F.3d 388, 392 (5th Cir. 2006). To survive summary judgment, a nonmoving party must present specific facts or evidence that would allow a reasonable factfinder to find in his favor on a material issue. *Anderson*, 477 U.S. at 247. However, merely asserting a factual dispute or conclusory denials of the allegations raised by the moving party is insufficient; the nonmoving party must come forward with competent evidence. *Id.* at 249-250. The nonmoving party may set forth specific facts by submitting affidavits or other evidence that demonstrates the existence of a genuine issue. *Id. See also* Fed. R. Civ. P. 56(c). Competent evidence of the nonmoving party is to be believed, and all justifiable inferences are to be drawn in her favor. *Id.*

## IV.   ANALYSIS

GeoSouthern alleges three separate claims: (1) a declaratory action under the Declaratory Judgment Act, 28 U.S.C. § 2201; (2) violations of the Prompt Payment Act, Texas Insurance Code §§ 542.055-058; and (3) breach of contract. Am. Compl. [ECF No. 13] 5-8. GeoSouthern moved for summary judgment on each of these claims. Summ. J. Mot. [ECF No. 24] 5. The Court will consider each claim separately.

### a.   **Declaratory Action**

The Declaratory Judgment Act provides, in pertinent part, that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a).

Plaintiff seeks a declaration that, under the terms of the policy, defendant is obligated to defend and indemnify GeoSouthern in the *Noyola* suit. Am. Compl. 5. For support, GeoSouthern points to the scope of coverage set out by the policy:

- Section I of Coverage of the Policy provides that Lloyd's will pay sums that the insured becomes legally obligated to pay as damages because of "bodily injury," which is defined in Section V¶ 3 as "bodily injury, sickness or disease sustained by a person, including death". [sic]

- The Policy also provides that coverage applies to "bodily injury" caused by an "occurrence", [sic] which is defined in Section V ¶ 13 as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions". [sic]

- Noyola's alleged injury occurred on January 18, 2014, which was within the Policy period.

*Id.* In short, because the policy covers legal obligations based on "bodily injury," and because the *Noyola* suit seeks damages for bodily injury, GeoSouthern argues that defendant owes a duty to defend, must reimburse GeoSouthern for attorney's fees, and must indemnify GeoSouthern for any liability found in the *Noyola* suit.

Defendant argues that "there is no longer any issue, dispute, or controversy as to whether Plaintiff is covered under the insurance policy that Plaintiff has brought suit." Resp. [ECF No. 30] 5. Indeed, as defendant points out, defendant has now tendered a defense for GeoSouthern in the *Noyola* case. *See* Summ. J. Mot. Exhibit 11 (the December 29, 2015 assignment letter). However, defendant argues that this should render the declaratory action moot rather than result in summary judgment.

GeoSouthern argues that defendant's attorney assignment letter does not actually address the duty to indemnify, and that GeoSouthern is entitled to a declaration that defendant owes both a duty to defend and to indemnify. *See* Reply [ECF No. 32] 2-3. Under Texas law, the duty to defend

and the duty to indemnify are distinct and separate duties. *Northfield Ins. Co. v. Loving Home Care, Inc.*, 363 F.3d 523, 527-28 (5th Cir. 2004). The Court will thus consider those two duties separately.

### i. Duty to Defend

When determining whether to adjudicate a declaratory judgment action, a district court should ask "(1) whether the declaratory action is justiciable; (2) whether the court has the authority to grant declaratory relief; and (3) whether to exercise its discretion to decide or dismiss the action." *Sherwin-Williams Co. v. Holmes County*, 343 F.3d 383, 387 (5th Cir. 2003) (citing *Orix Credit Alliance, Inc. v. Wolfe*, 212 F.3d 891 (5th Cir. 2000). Justiciability is a primarily a question of whether an "actual controversy" exists between the parties to an action. *Orix*, 212 F.3d at 895. Similarly, the question of mootness depends on "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issue of a declaratory judgment." *Connell v. Shoemaker*, 555 F.2d 483, 486 (5th Cir. 1977) (quoting *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941)). As a general rule, an actual controversy exists where "a substantial controversy of sufficient immediacy and reality [exists] between parties having adverse legal interests." *Orix*, 212 F.3d at 896 (quoting *Middle South Energy, Inc. v. City of New Orleans*, 800 F.2d 488, 490 (5th Cir. 1986).

Regarding the duty to defend, defendant argues that there is no actual controversy between the parties here because Lloyd's London tendered a defense regarding the *Noyola* suit on December 29, 2015. Resp. 5, ¶ 15. Indeed, both parties seem to agree that GeoSouthern is covered under the insurance policy here, and both parties agree that defendant must defend GeoSouthern in the *Noyola* suit. However, defendant apparently refused to defend GeoSouthern until December 29,

2015, rejecting claims made in either the May 19, 2015 letter to Greenwood Insurance Group or the July 13, 2015 letter to PGI Commercial. *See* Summ. J. Mot. Exhibits 7, 8, & 11 [ECF Nos. 25-6, 7, & 10]. Further, according to GeoSouthern, defendant refuses to reimburse plaintiff's counsel for defense in either the *Noyola* suit or the instant action. Thus, there is at least some controversy of sufficient immediacy or reality between the parties here regarding the breach of an alleged duty to reimburse plaintiff's counsel. That issue is considered below with GeoSouthern's breach of contract claims.[2] However, there is no controversy between the parties here regarding the duty to defend GeoSouthern in the *Noyola* suit. Thus, there is no actual controversy, and the duty to defend claim is not a justiciable declaratory action. Accordingly, this Court will deny the motion for summary judgment.

### ii. Duty to Indemnify

GeoSouthern also argues that the policy requires defendant to indemnify GeoSouthern for the claims asserted in the *Noyola* suit. For support, GeoSouthern points out that it is an additional insured under the policy, that the policy covers obligations to pay damages resulting from bodily injury, and that the *Noyola* suit seeks recovery for bodily injury. Indeed, as noted above, the parties agree that GeoSouthern is covered by the policy. Further, defendant appears to concede that, to the extent that damages are awarded in *Noyola*, GeoSouthern is potentially entitled to indemnity. *See* Resp. 6, ¶ 22 ("[T]here is no dispute about coverage remaining in this matter, as Defendant has tendered the defense of this suit to Plaintiff. Therefore, to the extent that Plaintiff is seeking a

---

[2] GeoSouthern argues that the duty to defend claim is not moot because Lloyd's London has refused to pay plaintiff's attorney's fees. However, the declaratory action seeks a declaration of rights and obligations under the contract. The failure to reimburse GeoSouthern for attorney's fees does not create an actual dispute regarding the duty to defend. The reimbursement claims—whether Lloyd's London is contractually obligated to reimburse plaintiff's counsel for work performed in defense of GeoSouthern—are better considered as breach of contract. Indeed, the Amended Complaint [ECF No. 13] alleges that "Lloyd's breaches include . . . failing and refusing to timely and appropriately reimburse GeoSouthern for defense costs incurred in defending the *Noyola* suit." Am. Compl. 8. Thus, this Court will consider the reimbursement claims as part of plaintiff's action for breach of contract.

ruling from this Court that it is entitled to indemnity if damages are awarded, there is no case or controversy over that issue.").[3] However, defendant argues that the issue of indemnification here is not yet ripe because the underlying case remains active. Resp. [ECF No. 30] 2, 6-7. This Court agrees.

The duty to defend is broader than the duty to indemnify. *Northfield*, 363 F.3d at 528 (citing *Am. States Ins. Co. v. Bailey*, 133 F.3d 363, 368 (5th Cir. 1998)). For instance, the duty to defend arises when the facts alleged in the complaint, taken as true, potentially state a cause of action falling under the terms of the policy. *Id.* (citing *Canutillo Indep. Sch. Dist. v. Nat'l Union Fire Ins. Co.*, 99 F.3d 695, 701 (5th Cir. 1996)). "In contrast, the duty to indemnify is not based on the third party's allegations, but upon the actual facts that underlie the cause of action and result in liability." *Id.* at 528-29. "Generally, Texas law only considers the duty-to-indemnify question justiciable after the underlying suit is concluded, unless 'the same reasons that negate the duty to defend likewise negate any possibility the insurer will ever have a duty to indemnify.'" *Id.* at 529 (quoting *Farmers Tex. County Mut. Ins. Co. v. Griffin*, 955 S.W.2d 81, 84 (Tex. 1997).

As noted above, there is no dispute that Lloyd's London owes a duty to defend GeoSouthern in the underlying *Noyola* suit. Further, as of the date of this opinion, the underlying *Noyola* suit is ongoing. Thus, under Texas law, any dispute over defendant's duty to indemnify GeoSouthern is not yet ripe. GeoSouthern has not (yet) established that Lloyd's London is under a duty to indemnify. Further factual development is required in the state litigation. Thus, the duty to

---

[3] This argument seemingly conflates the duty to defend and the duty to indemnify, which are separate duties. However, defendant is arguing that its tender of a defense to GeoSouthern renders the issue of indemnity undisputed. This Court, therefore, construes the argument as a concession that Lloyd's London potentially owes a duty to indemnify based on damages awarded in the *Noyola* suit, but that the matter is not ripe until such damages are awarded.

indemnify issue is not justiciable. Accordingly, this Court will deny the motion for summary judgment.

### b. **Prompt Payment Act claims**

The Texas Insurance Code imposes several requirements on the processing and payment of insurance claims. For example, under TEX. INS. CODE § 542.055, an insurer must acknowledge receipt of a claim, commence any investigation of the claim, and request all items, statements, and forms that the insurer reasonably believes will be required from the claimant within fifteen (15) days—or 30 business days if the insurer is an eligible surplus lines insurer.[4] After the insurer receives those items, the insurer must notify a claimant in writing of the acceptance or rejection of the claim within fifteen (15) business days. TEX. INS. CODE. § 542.056. However, if the insurer is unable to accept or reject the claim within fifteen business days, the insurer must notify the claimant of the reasons why additional time is needed. TEX. INS. CODE § 542.056(d). In any case, an insurer must accept or reject a claim no later than the forty-fifth (45th) day after the notification that additional time is needed. *Id.* If the claim is accepted, the insurer must pay the claim within five (5) business days of that written notice—or twenty (20) business days if the insurer is an eligible surplus lines insurer. TEX. INS. CODE § 542.057. If payment is delayed by sixty (60) days or more, the insurer must pay damages. TEX. INS. CODE § 542.058. Insurers who violate these requirements are liable, in addition to the amount of the claim, for interest of 18% per annum and reasonable attorney's fees. TEX. INS. CODE § 542.060. Critically, the statutory deadlines for accepting and paying claims do not begin to run until the insurer has received "all items,

---

[4] "Eligible surplus lines insurer means an insurer that is not an authorized insurer, but that is eligible under Subchapter B [TEX. INS. CODE §§ 981.051-981.066] in which surplus lines insurance is placed or may be placed under [§ 981.001 et seq.]." TEX. INS. CODE § 981.002(4). Surplus lines insurance is generally less regulated and subject to less oversight than traditional insurance policies.

statements, and forms required by the insurer to secure final proof of loss." TEX. INS. CODE §§ 542.056(a); 542.058(a).

GeoSouthern claims that Lloyd's London received notice on May 19, 2015, when GeoSouthern tendered a letter to defendant's agent Greenwood Insurance Group. Summ. J. Mot. 14, ¶ 25. Under this timeline, according to GeoSouthern, defendant was required to acknowledge and commence its investigation within fifteen (15) days: on or before June 7, 2015.[5] GeoSouthern argues that defendant failed to take any responsive action within the statutory time frame outlined by the Prompt Payment Act. Summ. J. Mot. 14, ¶ 25. Specifically, that PGI Commercial did not request information regarding the claim until August 5 and did not accept the claim until December 29, 2015, thus violating TEX. INS. CODE §§ 542.055 and 542.056. *Id.* Further, GeoSouthern argues that defendant has "made no effort to pay GeoSouthern's attorney's fees, incurred both in the *Noyola* lawsuit and in the instant proceedings." Summ. J. Mot. 14, ¶ 26. Thus, GeoSouthern argues, Lloyd's London also violated § 542.058 by delaying payment of attorney's fees for more than sixty (60) days after the May 19, 2015 notification.[6]

Defendant argues that a material fact exists as to when it was notified of GeoSouthern's claim, and therefore when they were obligated to respond and provide payment under the Texas Insurance Code. Resp. 5-6. Specifically, defendant claims that GeoSouthern's May 19, 2015 letter to Greenwood Insurance Group was not a proper notification because Greenwood was not the correct entity with whom to file a claim. *Id.* "The policy specifically provides that Notice of Claims are to be sent to 'PGI Commercial, Inc., Marlton Executive Park, 701 Rte 73 S. Bldg. #2, Ste 105, Marlton, NJ 08053.'" Resp. 5, ¶ 17. Defendant argues that GeoSouthern did not notify PGI

---

[5] How GeoSouthern reached this timeline is unclear. Fifteen days after May 19, 2015 is June 3, 2015.
[6] Sixty days from May 19, 2015 is July 18, 2015.

Commercial, Inc. until the July 13, 2015 letter. Thus, defendant argues, there is a material dispute as to when it was required to respond under the Insurance Code. This Court agrees.

The evidence presented here raises a genuine issue of material fact concerning the time frame of when Lloyd's London was required to acknowledge receipt of the claim and commence an investigation or request materials from GeoSouthern. First, the evidence here suggests that Lloyd's London may be a surplus line insurer. The company history provided by plaintiff includes a notation for "Surplus Lines Eligibility." Summ J. Mot. Exhibit 9 [ECF No. 25-8]. Further, the insurance policy itself includes an endorsement modifying the commercial general liability and professional liability sections to designate a surplus lines agent, Exhibit 1 [ECF No. 24-1] p. 72, and a guaranty fund nonparticipation notice, Exhibit 1 p. 73, identifying a surplus lines document as required by TEX. INS. CODE § 982.101(b).[7] While the parties have not raised this issue, the status of the policy here is of critical importance to the Prompt Payment deadlines.

For example, if Lloyd's London is an eligible surplus lines insurer, TEX. INS. CODE § 542.055 requires defendant to acknowledge and commence an investigation within thirty (30) business days. If not, the same statute requires defendant to acknowledge and commence and investigation within fifteen (15) days. Similarly, under TEX. INS. CODE § 542.057(c), surplus lines insurers must pay claims within twenty (20) business days after notice of acceptance. In contrast, other insurers

---

[7] Texas law requires a surplus lines policy to contain the following language in at least 11 point font:

> This insurance contract is with an insurer not licensed to transact insurance in this state and is issued and delivered as surplus lines coverage under the Texas insurance statutes. The Texas Department of Insurance does not audit the finances or review the solvency of the surplus lines insurer providing this coverage, and the insurer is not a member of the property and casualty insurance guaranty association created under Chapter 462, Insurance Code. Chapter 225, Insurance Code, requires payment of a _____ (insert appropriate tax rate) percent tax on gross premium.

TEX. INS. CODE § 982.101(b). The policy here includes this language verbatim.

must pay within five (5) business days. TEX. INS. CODE § 542.057(a). Therefore, whether Lloyd's London is an eligible surplus lines insurer or a traditional insurer is critical to the disposition of the Prompt Payment claim. That issue, however, has not been adequately addressed by either party.

Second, as noted by defendant, there is a material issue of fact as to when defendant actually received notice of GeoSouthern's claim. Plaintiff claims to have notified defendant on May 19, 2015. Defendant, however, argues that the May 19 letter was sent to the incorrect party and that they did not receive notice until the July 13 letter sent directly to PGI Commercial. Thus, according to defendant, the Prompt Payment time frame did not start until July 13, 2015. Further, the evidence in the record suggests that a PGI Commercial representative contacted GeoSouthern by telephone on August 5, 2015, 23 days after the July 13 letter. *See* Exhibit 10 [ECF No. 25-9]. This suggests that PGI Commercial *did* acknowledge and accept GeoSouthern's claim, and, depending on the time frame, this may or may not have complied with the requirements of § 542.055.[8] Indeed, plaintiff's own motion suggests as much. *See* Summ. J. Mot. 14, ¶ 26 ("After the suit was filed, Lloyd's, through a third-party administrator, PGI claims, *requested information* regarding the scope of work that its insured, AES, provided to GeoSouthern under the terms of the Master Services Agreement. *Despite its agreement to accept GeoSouthern's tender,* Lloyd's waiting another over [sic] four months before it provided written acknowledgement from the insurer.") (emphasis added). Thus, whether and when an oral acknowledgement was made—either before or after the suit was filed—and whether and when the claim was accepted remains an issue of material fact.[9]

---

[8] To the extent that the surplus lines insurer deadline is controlling, the August 5 phone call would be within 30 business says of the July 13 letter. Further, § 542.055 suggests that acknowledgements could be made orally. *See* TEX. INS. CODE § 542.055(d) ("If the acknowledgment of receipt of a claim is not made in writing, the insurer shall make a record of the date, manner, and content of the acknowledgment.").

[9] Defendant suggests that the July 29, 2015 filing of this action prevented it from responding to the claim. *See* Resp. 6, ¶ 18 ("[F]urther, Defendant was not provided the opportunity to respond prior to Plaintiff filing suit, as such, Plaintiff's Motion for Summary Judgment under the Prompt Payment Act should be denied."). However, it seems

Also, while the July 13 letter was presumably *sent* on that date, there is no evidence here as to when defendant *received* notice of the claim. The letter itself appears to have been sent via Certified Mail, but the receipt showing the delivery date has not been produced in the record. Indeed, Lloyd's London suggests that the letter was received even after the suit was filed on July 29, 2015, 16 days after the July 13 letter was apparently sent. *See* Resp. 6, ¶ 17. Since the Prompt Payment deadlines are triggered by an insured's receipt of notice, the disputes surrounding the July 13 letter are material as to when Lloyd's London was required to respond. Accordingly, this Court finds that there is a genuine issue of material fact as to when defendant had notice of GeoSouthern's claim and when defendant was obligated to respond under the Texas Insurance Code.

Defendant also argues that it was not provided with "claim amounts"—*i.e.* attorney invoices—until January 15, 2016. Resp. 6, ¶ 19. Thus, defendant argues, defendant was unable to pay the sums owed until at least January 15, 2016. While an insurer may delay payment while investigating a claim, there is little evidence here that Lloyd's London actually commenced an investigation of the claim or requested from GeoSouthern the items, statements, and forms relevant to an investigation as outlined by TEX. INS. CODE § 542.055. However, the August 5 e-mail between PGI Commercial and plaintiff's counsel suggests that PGI Commercial may have made some acknowledgement and may have requested some information from GeoSouthern regarding the claim. Thus, the existence of any requests for information from GeoSouthern, or the commencement of an investigation as to the claims, remains a fact issue.

Plaintiff argues that defendant never requested attorney's fees invoices, but they were provided on January 15. Resp. 14, ¶ 26; Exhibit 12 [ECF No. 25-11]. However, the e-mail suggests that

---

clear from the record that the channels of communication were open between the parties at least as early as August 5. The Court rejects this as a timid excuse for potentially missing a statutorily imposed deadline.

reimbursement was "previously discussed" with PGI Commercial. The context of this discussion, and whether it was in response to an investigation of the claim remains unclear. Further, to the extent that the January 15 disclosures satisfied a claim investigation or requests for information, those disclosures would have triggered an obligation to pay.[10] However, because issues of material fact exist as to the relevant time frame under which Lloyd's London was obligated to acknowledge and commence that investigation, similar issues exist as to when—if at all—defendant had received "all items, statements, and forms" required to trigger the statutory deadlines, or whether defendant was required to notify GeoSouthern that additional time was needed, as outlined by TEX. INS. CODE § 542.056, or when defendant's failure to reimburse passed the 60-day threshold outlined in TEX. INS. CODE § 542.058. Accordingly, because issues of material fact exist as to the relevant statutory deadlines, this Court is unable to find that plaintiff is entitled to judgment as a matter of law regarding the Prompt Payment Act claims.

The Court notes that defendant has not provided any evidence here, and has relied solely on the evidence provided by plaintiff. However, GeoSouthern bears the burden at trial of establishing essential elements of the violations of the Texas Insurance Code, Chapter 542, including the relevant time frames and dates of notice, and this Court must resolve all justifiable inferences in the nonmovant's favor. Therefore, for the reasons set forth above, the Court will deny summary judgment as to the Prompt Payment Act claims.

---

[10] Previously, some courts characterized the prompt payment deadlines and notice requirements as "unworkable" in the context of an insured's claim under defense benefits. *See Lamar Homes, Inc. v. Mid-Continent Cas. Co.*, 242 S.W. 3d 1, 19 (Tex. 2007). However, the law is now clear. "[W]hen the insurer wrongfully rejects its defense obligation, the insured has suffered an actual loss that is quantified after the insured retains counsel and begins receiving statements for legal services." *Lamar Homes*, 242 S.W. 3d at 19. Attorney invoices are the "last piece of information needed to put a value on the insured's loss." *Id.* Thus, when the insured submits invoices for legal services to the insurer for payment, and the insurer fails to pay within the statutory deadline, the insurer is then liable for 18% interest and reasonable attorney's fees.

### c. Breach of Contract claims

The elements of a breach of contract claim under Texas law are: "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." *Villarreal v. Wells Fargo Bank, N.A.*, 814 F.3d 763, 767 (5th Cir. 2016). "A breach occurs when a party fails to perform a duty required by the contract." *Smith Int'l, Inc. v. Egle Grp., LLC*, 490 F.3d 380, 387 (5th Cir. 2007). However, a failure to perform is not a breach if time for performance has not yet occurred. *See* Restatement (Second) of Contracts § 235 cmt. b ("Non-performance is not a breach unless performance is due.").

Plaintiff argues that it is entitled to summary judgment on its breach of contract claim because GeoSouthern is an insured under the policy, and the policy clearly covers the claims brought in the *Noyola* suit—*i.e.* sums that GeoSouthern becomes legally obligated to pay as damages because of bodily injury, as defined by Section V, ¶ 3. In other words, defendant breached the terms of the policy when it failed to defend GeoSouthern in the *Noyola* suit and continues to breach by failing to reimburse plaintiff's counsel for services provided in *Noyola* and in this action.

Lloyd's London does not dispute the validity of the contract. Rather, defendant argues "the question of whether Defendant breached the policy is not yet ripe for review" because "it has not been determined what is owed for the defense and indemnity of the underlying suit to Plaintiff." Resp. 8, ¶ 25. A case is generally ripe if any remaining questions are purely legal ones; conversely a case is not ripe if it is abstract, or hypothetical, and further factual development is required. *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 833 F.2d 583, 586-87 (5th Cir. 1987) (citing *Thomas v. Union Carbide Agricultural Products Co.*, 473 U.S. 568 (1985)).

As noted above, both parties seem to agree that GeoSouthern is covered under the insurance policy here, and both parties agree that defendant must defend GeoSouthern in the *Noyola* suit.

However, because defendant has apparently refused to reimburse plaintiff's counsel for defense in either the *Noyola* suit or the instant action, there is an actual controversy regarding a contractual duty to reimburse plaintiff's counsel for defense tendered prior to December 29, 2015. This controversy is not hypothetical or abstract. Further, the question now—whether Lloyd's London was contractually obligated to reimburse plaintiff's counsel for its work prior to December 29, 2015—is a purely legal one. No further factual development is required; this Court need not determine the total cost for defense and indemnity in *Noyola* before determining whether Lloyd's London must reimburse plaintiff's counsel for its work prior to December 29, 2015. Thus, this controversy is ripe.

Lloyd's London also argues that it has not denied coverage, and that plaintiff has not alleged a specific provision breached by failing to pay attorney's fees that were not presented to Defendant until January 2016. Resp. 7, ¶ 24. Presumably, this duty arises from Section I of the Commercial General Liability Policy, which states:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. **We will have the right and duty to defend the insured against any "suit" seeking those damages.** However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.

ECF No. 24-1 p. 5 (emphasis added). Lloyd's London is the insurer for the Commercial General Liability Policy. AES is the named insured, and GeoSouthern is an additional insured to the policy via a Master Services Agreement between AES and GeoSouthern. Based on terms of the policy, and defendant's own tender of defense to GeoSouthern, GeoSouthern has established that Lloyd's London owes a duty to defend GeoSouthern in the *Noyola* suit.

However, Lloyd's London correctly points out that GeoSouthern has not established "what provision of the policy Defendant has breached by failing to pay attorney's fees *that were not presented to Defendant until January 2016.*" Resp. 7, ¶ 24 (emphasis added). Defendant argues that it did not breach the policy "because Plaintiff has not submitted all sums potentially owed under the policy for the defense and indemnity of the underlying suit." Resp. 8, ¶ 24. As noted above, it is unclear whether there are outstanding "items, statements, and forms" relevant to an investigation into these insurance claims. There remain several issues of fact as to the applicable time frame under the Prompt Payment provisions, including when Lloyd's London was notified of claims under the contract, whether those claims were acknowledged, and whether Lloyd's London conducted an investigation or requested relevant items, statements, or forms. Accordingly, while it seems clear—even conceded—that Lloyd's London owes a duty to defend GeoSouthern, there remains an issue of material fact as to the time for performance under that duty—*i.e.* when was GeoSouthern required to tender payment under the terms of the policy.

Similarly, defendant argues that "[t]he policy provides that claims that are covered under the policy will be paid, but does not provide the time frame for these payments." Resp. 7, ¶ 24. It may be true that the policy does not provide such a time frame, but that does not mean that Lloyd's London can indefinitely delay payment of claims under the policy. The proper time frame for payments of claims under the policy is established by the Prompt Payment Act. Thus, to the extent that GeoSouthern has claims for attorney's fees under the policy here, Lloyd's London is required to pay under the time frame set forth under the provisions of the Insurance Code discussed herein. For the reasons articulated above, fact issues remain as to the relevant time frame under the Prompt Payment Act. Accordingly, fact issues also remain as to the time for performance under the terms of the policy. Therefore, fact issues remain as to breach, an essential element of breach of contract.

The Court again notes that defendant has not provided any evidence here, and has relied solely on the evidence provided by plaintiff. However, GeoSouthern bears the burden of establishing essential elements of breach of contract, including the time for performance and the relevant time frame under the Prompt Payment Act. This Court must resolve all justifiable inferences in the nonmovant's favor. Therefore, for the reasons set forth above, the Court will deny summary judgment as to the breach of contract claims.

## V.    CONCLUSION

In sum, plaintiff moved for summary judgment on its three claims for (1) declaratory judgment, (2) violations of the Prompt Payment Act, and (3) breach of contract.

Regarding the declaratory action, this Court finds that no controversy remains as to the duty to defend claim. Similarly, this Court finds that the duty to indemnify claim is not ripe. Thus, the declaratory action is not justiciable. Regarding the Prompt Payment Act claims, material issues of fact still exist as to the relevant statutory deadlines, particularly when Lloyd's London was obligated to acknowledge the claims and commence an investigation, and whether defendant violated the requirements of Texas Insurance Code, Chapter 542. Similarly, regarding the breach of contract claims, material issues of fact still exist as to whether plaintiff breached a duty to reimburse plaintiff's counsel for services rendered before December 29, 2015.

Accordingly, this Court will deny the motion for summary judgment for all three claims.

**A separate order shall issue.**

Royce C. Lamberth
United States District Judge

DATE: 2/24/17